**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*PHV* application forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mgirardi@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| RENEE FIRATO, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INDUS COSMECEUTICALS PVT. LTD.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Renee Firato ("Plaintiff") brings this Class Action against Indus Cosmeceuticals Pvt. Ltd. ("Mina" or "Defendant"), individually and on behalf of all others similarly situated. The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## NATURE OF THE ACTION

1. This is a civil class action concerning Defendant's design, formulation, manufacture, marketing, advertising, distribution, and sale of eyebrow dye products and kits (sold under the "Mina ibrow" brand) that contain henna, which is dangerous when used on the immediate eye area, including the eyebrow (collectively, the "Products").[1] In all instances, application to the eyebrow is the only conceivable use of the Products. Indeed, Defendant's use of the name "ibrow" (pronounced "eyebrow") is an express representation that the Products can be safely used on eyebrows.

2. The presence of henna renders the Products unsafe for use in the eye area, including on the eyebrow (the "Defect"). Yet Defendant markets the Products for cosmetic application on the eyebrow. Such use is inherently dangerous and sale of the Products for such use is illegal. The Products cannot be used for their principal intended purpose. The Products are thus worthless by virtue of the Defect.

3. The Products are designated by the state of California as unsuitable and illegal for cosmetic use in the eye area, including the eyebrow, through California's Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code. §§ 109875, *et seq.* (the "Sherman Laws").

4. The Products are thus adulterated and misbranded under the Sherman Laws. Accordingly, it is unlawful for Defendant to advertise, promote, market, or sell the Products. Nonetheless, Defendant's marketing, advertising, packaging, and public statements encourage and instruct consumers to use the Products on the eyebrow.

---

[1] The Products include any and all products sold by Defendant that (1) contain henna as an ingredient and (2) are advertised, marketed, or packaged for use and/or contain instructions to use on the eyebrow.

5.      Defendant has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at deceiving consumers, including Plaintiff, into believing that the Products are safe for their sole intended use: cosmetic application on the eyebrow.   Again, products containing henna are unsafe for that purpose.

6.      At all relevant times, Defendant knew about the Defect and that the Products were banned by the State of California, but nevertheless marketed, advertised, and sold the Products for use around the eyes/on the eyebrow without warning consumers of the known dangers.

7.      As a direct and proximate result of Defendant's misleading conduct, concealment of the Defect, and failure to adequately warn consumers about the dangers of henna and the fact that the Products are banned by the State of California, Plaintiff and other similarly situated consumers ("Class" or "Class Members") purchased and/or used the Product to their detriment.

8.      Plaintiff and putative Class Members were unaware of the Defect and that the Products are banned by the State of California at the time they purchased the Products.  Had Plaintiff and Class Members known that the Products contain a Defect rendering them unfit for their intended purpose and that they are banned by the State of California, they would not have purchased the Products or would have paid substantially less for the Products.

9.      Plaintiff and all putative Class Members purchased the Products, which suffered from the same Defect at the point of sale, and pose substantially the same safety risk to Plaintiff, putative Class Members, consumers, and the public.

10.     All of the Products suffer from the same Defect and are similarly mislabeled and falsely advertised because each of the Products (1) contains henna, and (2) is intended for cosmetic application on the eyebrow.  The State of California has deemed products containing henna not fit for use around the eye area.

11.     Plaintiff and each putative Class Member have been damaged and suffered an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and injunctive relief.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class is a citizen of a State different from the Defendant.

13.     This Court has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase. Defendant has marketed, promoted, distributed, and sold the Products in California, rendering exercise of jurisdiction by California courts permissible.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

15.     Plaintiff Renee Firato is a resident of Pleasanton, California, who purchased and used the Products within the relevant time period.  Specifically, in February 2022, Plaintiff Firato purchased and used Defendant's Mina ibrow Medium Brown Regular Pack from Amazon.com for $14.95 ("Plaintiff's Purchased Product.").  Plaintiff's Purchased Product contains henna and thus suffers from the Defect.  Plaintiff Firato followed the instructions that came with Plaintiff's Purchased Product and used the product to color her eyebrows.  Prior to using Plaintiff's Purchased Product, Plaintiff Firato did not suffer from any eye issues.  But since using Plaintiff's Purchased Product, Plaintiff Firato has suffered from eye redness and irritation, and has developed styes on her eyelids.  Upon developing eye irritation, Plaintiff stopped using Plaintiff's Purchased Product. Plaintiff still has unused Product in her possession, but because of the Defect, Plaintiff cannot use the remaining Product and, accordingly, has suffered economic loss.

16.     Defendant Indus Cosmeceuticals Pvt. Ltd. is a private limited company headquartered in Faridabad, Haryana, India.  Defendant designs, formulates, manufactures, markets, advertises, distributes, and sells a wide range of eyebrow cosmetic products including but not limited to brow and lash color kits, brow care products, brow henna products, and eyebrow and eyelash grooming kits, nationwide, including in California.

## **THE PRODUCTS**

17.     The Products are sold throughout the United States, including on Amazon.com and ibrowhenna.com.

18.     The Products that are the subject of this lawsuit are henna-based eyebrow products that Defendant has promoted or advertised for use on the eyebrow during the maximum time period allowed by law.

19.     Defendant's conduct was substantially similar with regard to the Products.  The Products, which are sold online by Defendant at ibrowhenna.com as well as by third-party retailers, are all: (1) advertised and marketed by Defendant for cosmetic use on the eyebrow/eye area; (2) reasonably understood by consumers to be safe and suitable for use in the eyebrow/eye area; and (3) purchased and used by consumers for cosmetic use on the eyebrow/eye area even though sale for such use is prohibited by the State of California's regulations.

20.     In all cases for the Products, Defendant explicitly marketed the Products for use in the eye area, and specifically for application to the eyebrow.

***Defendant's ibrow Products***

21.     There are currently a multitude of variations of Mina ibrow products available for purchase on both ibrowhenna.com and Amazon.com which are formulated with and contain henna, which is unsafe for and prohibited for use around the eye area.

22.     The price of the Products can range from around $10.00 to $150.

23.     The Products are intentionally marketed and sold for cosmetic application in the eyebrow/eye area, their only reasonable and foreseeable use by consumers is cosmetic application in the eyebrow/eye area, and Defendant's promotional images, tutorials, and other advertising materials instruct and encourage that said products be used for cosmetic application in the eyebrow/eye area.  Defendant's practices in this regard are substantially similar across all of the Products at issue.

24.     All Mina ibrow Products are sold for use on the eyebrow.  Indeed, use on the eyebrow is the only reasonable use of the Products, and Defendant's use of the name "ibrow"

1    (pronounced "eyebrow") for the Products is an express representation that the Products can be

2    safely used on eyebrows.

3         25.    The product pages on the ibrowhenna.com website refer to the products as "brow"

4    kits[2]:



14        26.    In Defendant's own words, the

16        Mina ibrow Henna Regular Kit is a henna-based brow tint kit for
          eyebrow coloring. A natural alternative to chemical brow tint, it gives
17        a semi-permanent tattoo-like effect to brows for a fashion-forward
          look.Our brow henna is made of the finest Indian henna and selected
18        pigments to leave a beautiful color on eyebrows and the underlying
          skin depending on the shade you choose. It covers sparse brows
19        effectively to give thicker, fuller and defined brows that last up to 6
          weeks.

21        A single pack of Mina Brow Henna contains 3 sachets of brow henna
          that can be used for up to 30 applications, so it's a great value for
22        money. It can also be mixed with brow henna of other colors to create
          a custom shade if desired.

24        It is EU compliant for use on brows and lashes; and does not contain
          ammonia, lead or other harmful chemicals.[3]

26   _____

27   [2] https://www.ibrowhenna.com/collections/eyebrow-henna-tinting-kit/products/eyebrow-henna-
     tinting-kit?variant=14569697181740

28   [3] *Id.*

27.     Defendant's website also directly instructs customers to apply the products to the eyebrow, and shows images of models using the Products on their eyebrow[4]:



28.     The Products are marketed in the same manner by third party sellers.  For example, Defendant's "MINA ibrow Henna Regular Pack & coloring tint kit up to 6 week (Dark Brown)" Amazon webpage depicts a model using the product on her eyebrows even though the Product contains henna, and directs consumers to apply the Products to the brow.[5]



CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO.

7

1
2
3
4
5
6
7
8
9
10
11
12

 

13
14
15
16
17
18
19
20
21
22
23



6

24   29.   Defendant's website and the Products' instruction manuals contain "directions for

25   use" directing consumers to apply the products to their eyebrows.[7]

26

27   ⁶ https://www.amazon.com/MINA-Conditioning-Professional-Weeks-Natural-
Applications/dp/B09QG61VHV

28   ⁷ https://www.ibrowhenna.com/pages/how-to-use



30.     In sum, Defendant regularly instructs and encourages consumers to use and apply the Products in and around the eye area, and in particular to the eyebrow, despite the fact that the Products contain henna.

## THE PRODUCTS VIOLATE STATE REGULATIONS

31.     Defendant has engaged in unfair, unlawful, and fraudulent business conduct by formulating, manufacturing, distributing, marketing, advertising, and selling the Products because the Products: (1) contain henna, a color additive that make them unreasonably dangerous for their sole and intended purpose; (2) are misbranded, mislabeled, and adulterated under California law; and (3) are illegal to sell, advertise, or promote for cosmetic application and use on the eyebrow.

32.     The California Health & Safety Code tightly regulates color additives for use in cosmetic products.

33.     The Products are illegal under California law.

34.     The Products are "cosmetics" and henna is a "color additive" as defined by the Sherman Laws.  *See* Cal. Health & Safety Code §§ 109900; 109895.

35.     The Products are adulterated, misbranded, unsafe, and illegal to sell or advertise under the Sherman Laws.  *See* Cal. Health & Safety Code § 111670 ("A cosmetic is adulterated if it bears or contains any poisonous or deleterious substance that may render it injurious to users under the conditions of use prescribed in the labeling or advertisement of the cosmetic, or under conditions of use as are customary or usual."); *id.* § 111695 ("Any cosmetic is adulterated if it is not a hair dye and it is, or it bears or contains, a color additive that is unsafe within the meaning of

Section 111665."); *id.* § 111700 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any cosmetic that is adulterated."); *id.* § 111730 ("Any cosmetic is misbranded if its labeling is false or misleading in any particular."); *id.* § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.") *see also id.* § 111665. ("Any color additive shall be considered unsafe for use with respect to any cosmetic unless there is in effect a regulation adopted pursuant to Section 110090 that prescribes its use in cosmetics.").

36.     The State of California directly incorporates the FDA's regulations concerning cosmetics through the Sherman Laws.  *See* Cal. Health & Safety Code § 110090 ("All color additive regulations and any amendments to the regulations adopted pursuant to the [FDCA], in effect on November 23, 1970, or adopted on or after that date, are the color additive regulations of this state. The department may, by regulation, prescribe conditions under which a color additive may be used in this state whether or not those conditions are in accordance with regulations adopted pursuant to the federal act.").  Any cosmetic containing Henna is specifically designated by the FDA as unsuitable and illegal for cosmetic use on the eyebrow.  *See* 21 C.F.R. § 73.2190 (c) ("Uses and restrictions. The color additive henna may be safely used for coloring hair only. **It may not be used for coloring the eyelashes or eyebrows, or generally in the area of the eye**.") (emphasis added); *See also* 21 CFR § 70.3(s) (The FDA defines "area of the eye" as "the area enclosed within circumference of the supra-orbital ridge and the infra-orbital ridge, **including the eyebrow**, the skin below the eyebrow, the eyelids and the eyelashes, and conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge." (emphasis added).[8]

37.     The State of California does not ban ingredients for use in the eye area at random. The eye area, both the eye itself and surrounding skin in the eye area, are more permeable than the skin generally.  Risks associated with an ingredient that may be tolerable for a product designed for

---

[8] Notably, none of Plaintiff's claims in this action are based on a violation of the FDCA.  Rather, any violation of the FDCA is relevant herein only to the extent it independently violates California law, including the Sherman Laws.

1   use on the face may become intolerable if the product is used in the eye area due to this potential

2   increased absorption of ingredients.

3        38.     Despite these regulations and the inherent dangers which prompted the passing of

4   these regulations, each of the Products is formulated with and contains henna, which is not

5   approved by the State of California for use in the eye area because henna is dangerous for that

6   purpose.

7        39.     Henna can cause physical injuries including eye pain, redness, itching, skin

8   irritation, rashes, and skin staining.

9        40.     Defendant knows that the Products are used in the eye area, and Defendant

10  intentionally markets them for such purpose.

11  ***Plaintiff's Experience***

12       41.     Plaintiff Firato purchased and used Defendant's Mina ibrow Medium Brown

13  Regular Pack from Amazon.com ("Plaintiff's Purchased Product"), which contains henna, for

14  personal cosmetic use.  Plaintiff Firato paid $14.95 for her purchase.

15       42.     Plaintiff Firato followed the instructions that came with Plaintiff's Purchased

16  Product, and used the Product to color her eyebrows.

17       43.     Prior to using Plaintiff's Purchased Product, Plaintiff Firato did not suffer from any

18  eye issues.

19       44.     Since using Plaintiff's Purchased Product, Plaintiff Firato has suffered from eye

20  redness and irritation, and has developed styes on her eyelids.

21       45.     Upon developing eye irritation Plaintiff stopped using Plaintiff's Purchased Product.

22  Plaintiff still has unused Product in her possession, but because of the Defect, Plaintiff cannot use

23  the remaining Products and, accordingly, has suffered economic loss.

24       46.     Plaintiff Firato believed that Plaintiff's Purchased Product was safe for its intended

25  use, namely for use on the eyebrow.  Plaintiff Firato also believed that Plaintiff's Purchased

26  Products were lawful to sell in the State of California, and were not misbranded or unlawful to sell.

27       47.     Plaintiff Firato reasonably relied on Defendant's representations and omissions

28  when she decided to purchase and use Plaintiff's Purchased Product on her eyebrows.

48.     At the time of purchase, Plaintiff Firato was not aware of any warnings, safety issues, or instructions for use indicating that the Products are not safe or fit for use on the eyebrow, or that the Products were misbranded, adulterated, unsafe, and unlawful to sell.

49.     Similarly, Plaintiff Firato was not aware of any warnings or disclosures that henna renders cosmetic products not safe or fit for use in the eye area, including on the eyebrow.

50.     The products Plaintiff purchased, like all of the Products at issue in this case are and were: (1) designed, formulated, and/or manufactured with henna, which renders them unsafe and unfit for their intended use and purpose (cosmetic application to the eyebrow); and (2) designed, formulated, and manufactured with substandard materials and/or construction which results in them being adulterated and/or misbranded Products that are unlawful to sell.  Defendant deceptively omitted and concealed these and other material facts from Plaintiff and other reasonable consumers.

51.     As a result of Defendant's deceptive misrepresentations and fraudulent business practices, Plaintiff suffered injury and loss of money, including but not limited to: (1) Plaintiff did not receive any of the advertised benefits as described above; (2) Plaintiff paid for Products that are unsafe by virtue of their design, formulation, construction, or workmanship; and (3) Plaintiff paid more for Plaintiff's Purchased Product than it is worth because the Product, by virtue of being formulated with and/or containing henna, is misbranded, mislabeled, adulterated, and worthless.

52.     If Plaintiff had known that the Products are unfit for their intended use and defective, were unlawful to sell and were misbranded, and that the representations made by Defendant are false and misleading, she would not have purchased Plaintiff's Purchased Product or would have paid substantially less than she did.  Therefore, Plaintiff did not receive the benefit of her bargain.

53.     Plaintiff was further damaged because upon discovering that the Products are unfit for their intended use and defective, were unlawful to sell and were misbranded, and that the representations made by Defendant are false and misleading, she had to cease using the Product she had already purchased.  Plaintiff still has unused Product in her possession.  Because of the Defect, Plaintiff cannot use these remaining Products and, accordingly, suffered economic loss.

54.     Plaintiff will be unable to rely on the Products' marketing and advertising in the future, and so will be unable to purchase the Products in the future, although she would like to if they were reformulated to replace the henna with a safe alternative.  Plaintiff continues to purchase eyebrow dye products, although she does not currently purchase the Products, and intends on purchasing eyebrow products in the future.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Classes and Subclasses:

> **Class**:
> All persons residing in the United States who purchased Products containing henna marketed for use in the eye area, including the eyebrow, from Defendant during the maximum period permitted by law.
>
> **California Subclass**:
> All members of the Class who purchased Products containing henna marketed for use in the eye area, including the eyebrow, in California during the maximum period permitted by law.

56.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

57.     **Numerosity**: The Members of the Classes are so numerous that joinder of all Members is impracticable.  While the exact number of putative Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout the United States.  The number of putative Class Members can be determined by sales information and other records in Defendant's possession.  Moreover, joinder of all putative Class Members is not practicable given their numbers and geographic diversity.  The Classes are readily identifiable from information and records in the possession of Defendant and their authorized retailers.

58.     **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff, like all putative Class Members, purchased Products that were designed, formulated, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all putative Class Members,

has been damaged by Defendant's misconduct in that, inter alia, Plaintiff incurred or will continue to incur damages as a result of overpaying for defective Products that are misbranded, adulterated, illegal, inherently dangerous, and not fit for their intended use. Furthermore, the factual basis of Defendant's misconduct is common to all putative Class Members because Defendant has engaged, and continues to engage, in systematic fraudulent behavior that was and is deliberate, includes negligent misconduct, and results in the same injury to all putative Class Members.

59.     **Commonality**: Common questions of law and fact exist as to all putative Class Members.  These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, inter alia:

(a) Whether the Products are defective;

(b) Whether the Products are defectively designed and/or manufactured;

(c) Whether the Products are adulterated, misbranded, unsafe, and illegal to sell or advertise under the Sherman Laws;

(d) Whether the Products are dangerous;

(e) Whether Defendant knew or reasonably should have known about the Defect prior to distributing and selling the Products to Plaintiff and the putative Classes;

(f) Whether Defendant knew or reasonably should have known the Products were dangerous when Defendant packaged, marketed, advertised, specified, instructed, encouraged, and otherwise represented that the Products were intended for use in the eye area, including on the eyebrow;

(g) Whether Defendant concealed from, omitted, and/or failed to disclose to Plaintiff and the putative Classes the dangers associated with the Products as a result of the presence of henna in the Products;

(h) Whether Defendant breached the implied warranty of merchantability and the Song-Beverly Consumer Warranty Act, relating to the Products;

(i) Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective and/or misbranded Products;

(j)  Whether Defendant violated Cal. Bus. & Prof. Code § 17500, *et seq.* (FAL);

(k)  Whether Defendant violated Civil Code §§ 1750, *et seq.* (CLRA);

(l)  Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL);

(m)  Whether Plaintiff and the putative Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of any such damages;

(n)  Whether Defendant should be enjoined from selling and marketing the Products containing henna for use in the eye area, including on the eyebrow;

(o)  Whether Defendant should be enjoined from selling, promoting, and advertising that the Products are safe and fit for use on the eyebrow when, in fact, the Products contain henna, a color additive that is prohibited for use in the eye area; and

(p)  Other issues which may be revealed in discovery.

60.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of putative Class Members. Plaintiff has no interests that are antagonistic to those of putative Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

61.    **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met.  Defendant will continue to commit the unlawful practices alleged herein, and putative Class Members will remain at an unreasonable and serious safety risk as a result of the Defect.  Defendant has acted and refused to act on grounds that apply generally to the putative Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

62.    **Predominance and Superiority**: Plaintiff and putative Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, putative Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of putative Class Members' individual claims, it is likely that few putative Class Members could afford to seek legal redress for Defendant's misconduct.

Absent a class action, putative Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

63.     Plaintiff is not aware of any potential issues that would preclude the maintenance of this class action.

64.     Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the putative Classes appropriate.

## COUNT I
### Breach of Implied Warranty
### (Individually and on behalf of the Classes)

65.     Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

66.     Plaintiff brings this cause of action against Defendant individually and on behalf of the Classes under California law.

67.     As described above, Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury in fact and has lost money or property as a result of Defendant's conduct.

68.     Defendant was at all relevant times the manufacturer, distributor, warrantor, merchant, and/or seller of the Products.  Defendant knew or had reason to know of the specific use for which the Products were purchased, as evidenced by Defendant's marketing efforts, website(s), advertisements, instructions for use, and other statements that promote and encourage consumers to use the Products on the eyebrow.

69.     By placing the Products into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that Products were merchantable and fit for the ordinary purposes for which it was sold.

70.     However, the Products are not fit for their ordinary purpose—use on the eyebrow—because they contains henna, which renders the Products unsafe and illegal to sell for use in the eye area, including on the eyebrow.

71.     The presence of henna prevents the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied warranty of merchantability.  These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that Products are not safe to use on the eyebrow. Defendant impliedly warranted that Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for use for eyebrow coloring, and/or other cosmetic use on the eyebrow; and (ii) a warranty that Products would be fit for their principal and intended use as eyebrow products.

72.     Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area/eyebrow without risk of injury.  Instead, the Products suffer from defective design and/or defective manufacturing, as alleged herein.

73.     Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia.

74.     The Products were defective at the time of sale when they left the exclusive control of Defendant or its agents.

75.     Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product. Moreover, Defendant exercised substantial control over which outlets and websites can carry and sell the Products, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to any third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to

consumers.  Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

76.     Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the Products that they would not have otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for—the Products are worthless or worth far less than Defendant represent due to the Defect.

77.     Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of warranty.  Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and has refused to repair or replace the defect free of charge.

78.     Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

79.     As a result of the breach of the implied warranty of merchantability, Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### COUNT II
**Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act**
**California Civil Code §§ 1790, *et seq.***
**(Individually and on behalf of the California Subclass)**

80.     Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

81.     Plaintiff brings this cause of action against Defendant individually and on behalf of the California Subclass.

82.     As described above, Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury in fact and has lost money or property as a result of Defendant's conduct.

83.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.

84.     Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

85.     Defendant knew or had reason to know of the specific use for which the Products were purchased, as evidenced by Defendant's marketing efforts, website(s), advertisements, instructions for use and other statements that promote and encourage consumers to use the Products on the eyebrow.

86.     By placing the Products into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that the Products were merchantable and fit for the ordinary purposes for which they were sold.

87.     However, the Products are not fit for their ordinary purpose—use on the eyebrow—because they contain henna, which renders the Products unsafe and illegal to sell for use in the eye area, including on the eyebrow.

88.     The presence of henna in the Products prevent the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied warranty of merchantability. These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that the Products are not safe to use on the eyebrow.  Defendant impliedly warranted that the Products were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for use cosmetic use in the eye area, including the eyebrow; and (ii) a warranty that the Products would be fit for their principal and intended use on the eyebrow.

89.     Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area, including the eyebrow, without risk of injury.  Instead, the Products suffer from a defective design and/or defective manufacturing, as alleged herein.

90.     Defendant's actions, as complained of herein, breached the implied warranties that the Products were of merchantable quality and fit for such use.  *See* Cal. Civ. Code §§ 1791.1 and 1792.

91.     The Products were defective at the time of sale when they left the exclusive control of Defendant or its agents.

92.     Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product. Moreover, Defendant exercised substantial control over which outlets and websites can carry and sell the Products, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to any third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers.  Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

93.     Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for— the products are worthless or worth far less than Defendant represent due to the Defect.

94.     Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continue to engage in such deceptive, unfair, and unreasonable conduct.

95.     Plaintiff and the Class Members seek all relief available under the Song-Beverly Act.

96.     Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT III**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment or Restitution**
**(Individually and on behalf of the California Subclass)**

97.     Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

98.     This alternative claim is asserted on behalf of Plaintiff and California Subclass Members to the extent there is any determination that any warranties extended to Plaintiff and Class Members by Defendant do not govern the subject matter of the disputes with Defendant, or that Plaintiff does not have standing to assert such claims against Defendant.  Plaintiff asserts this claim under California law.

99.     Plaintiff and Class Members conferred a monetary benefit on Defendant, and Defendant received and had knowledge of this benefit.

100.     By their wrongful acts and omissions described herein, including selling Defective Products, Defendant were unjustly enriched at the expense of Plaintiff and Class Members.

101.     Plaintiff and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged herein.

102.     Defendant has profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class Members under circumstances in which it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct, as described herein in connection with selling the defective Products.

103.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price if they had known that the Products were defective or contained prohibited ingredients at the time of purchase.

104.     Defendant either knew or should have known that payments rendered by Plaintiff and Class Members were given and received with the expectation that the Products were free of defects and were capable of providing the benefits represented by Defendant in the labeling,

marketing, and advertising of the Products.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

105.    Plaintiff and Class Members seek restitution from Defendant and an order from this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

106.    When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized third-party retailers and resellers.  Purchases through authorized retailers and resellers are sufficient to create privity because authorized third parties are Defendant's agents for the purpose of selling the Products.

107.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

108.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims for restitution entail fewer elements.

In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**COUNT IV**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
**(Individually and on behalf of the California Subclass)**

109.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

110.    Plaintiff brings this cause of action against Defendant individually and on behalf of the California Subclass.

111.    The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of California Business and Professions Code §§ 17500, *et seq*.

112.    California Business and Professions Code §§ 17500, *et seq*. prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

113.    Defendant, when it marketed, advertised, and sold the Products, represented to Plaintiff and Class Members that the Products were free of defects and safe when, in reality, the Products contained henna, which renders them defective and unsafe for use on the eyebrow, which is their sole purpose.

114.    At the time of their misrepresentations and/or omissions, Defendant was either aware that the Products were defective and unsafe or was aware that it lacked the information and/or knowledge required to make such a representation truthfully.  Defendant concealed, omitted, and failed to disclose this information to Plaintiff and Class Members.

115.    Defendant's packaging and product descriptions were false, misleading, and likely to deceive Plaintiff and other reasonable consumers about the true nature of the Products and the fact that they should not be used in the eye area, including on the eyebrow.

116.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

117.     Plaintiff has standing to pursue claims under the FAL because she reasonably reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials when selecting and purchasing the Products.

118.     In reliance on the statements made in Defendant's advertising and marketing materials, and Defendant's omissions and concealment of material facts regarding the quality and use of the Products, Plaintiff and Class Members purchased the Products.

119.     Had Defendant disclosed the true defective nature of the Products, Plaintiff and Class Members would not have purchased the Products or would have paid substantially less for them.

120.     Upon discovering the true defective nature of the Products and experiencing eye irritation from her use of the Products, Plaintiff stopped using the Products and still has unused Products in her possession.  Because of the Defect, Plaintiff cannot use the remaining Products and, accordingly, suffered economic loss.

121.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class Members who purchased the Products.

122.     Plaintiff and Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant by means of their deceptive or misleading representations, including monies already obtained from Plaintiff and Class Members as provided for by the California Business and Professions Code §§ 17500, *et seq*.

123.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and

restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**COUNT V**
**Violation of the California Consumer Legal Remedies Act ("CLRA"),**
**Civil Code §§ 1750, *et seq.***
**(Individually and on behalf of the California Subclass)**

124. Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

125. Plaintiff brings this cause of action individually and on behalf of the California Subclass.

126. The conduct described herein took place in the state of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

127. Plaintiff and California Class Members are "consumers" as defined by Civil Code § 1761(d) because they purchased the Products for personal or household use.

128. Defendant is a "person" as defined by Civil Code § 1761(c).

129. The Products are "goods" as defined by Civil Code § 1761(a).

130. Plaintiff and Class Members' purchases of the Products are "transactions" as defined by Civil Code 25 § 1761(e).

131. As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

(a) "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

(b) "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

132.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that the Products had benefits or characteristics that it did not actually have. In reality, the Products are defective, unsafe for use on the eyebrow, are unsafe, adulterated, and misbranded under the Sherman Laws, and are illegal to sell or advertise under the Sherman Laws.

133.    As detailed in the body of this complaint, Defendant has repeatedly engaged in conduct that violates the CLRA and has made false representations and statements to consumers about the Products' benefits, characteristics, and quality.  Indeed, Defendant concealed, omitted, and failed to disclose information and facts about the Products which are material to Plaintiff and California Class Members.

134.    The Products were not and are not "reliable," in that the Products are not safe and are of inferior quality and trustworthiness compared to other products in the industry.  As detailed above, Defendant further violated the CLRA when it falsely represented that the Products meet a certain standard or quality.

135.    As detailed above, Defendant violated the CLRA when it advertised the Products with the intent not to sell the Product as advertised and knew that the Products were not as represented.

136.    Defendant's deceptive practices were specifically designed to induce Plaintiff and Class Members to purchase the Products.

137.    Defendant engaged in uniform marketing efforts in order to reach and persuade Plaintiff and Class Members to purchase the Products.  Defendant's packaging, advertising, marketing, website, instructions for use, and retail product identification and specifications, contain numerous omissions as well as false and misleading statements regarding the quality, safety, and reliability of the Products.

138.    Despite Defendant's omissions and representations, Defendant also concealed information and material facts from Plaintiff and Class Members, who reasonably relied on Defendant's representations and omissions of material facts.

139.    Defendant's business practices are misleading and/or likely to mislead reasonable consumers and should be enjoined.

140.    On November 21, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a). The letter also provided notice of breach of express and implied warranties. The letter advised Defendant that it is in violation of the CLRA and demanded that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

141.    In accordance with Civil Code § 1780(a), Plaintiff and Class Members seek damages and injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices, and compensatory and punitive damages.

142.    Plaintiff also seeks punitive damages.  Defendant's conduct in deceiving customers and the public, including Plaintiff, about the health consequences of using the Products for their intended purpose, concealing material information about the Products' ingredients, and continuing to sell new products with the identical safety defect in violation of United States and California law, even after Plaintiff put Defendant on notice of the dangers, constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

143.    Defendant actively and knowingly participated in the dissemination of misrepresentations and concealment of material information related to the Products.

144.    Defendant's malicious and fraudulent conduct must be punished to deter future harm to others.  Therefore, exemplary damages are appropriate under the circumstances.

145.    Defendant has significant relationships with the State of California in regard to the conduct giving rise to punitive damages and the law applicable to this particular issue.

146.    Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff seeks damages, an order enjoining Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

### COUNT VI
**Violations of the California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(Individually and on behalf of the California Subclass)**

147.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

148.    Plaintiff brings this cause of action individually and on behalf of the California Subclass.

149.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

150.    Plaintiff and Class Members suffered an injury, by virtue of purchasing defective cosmetic products, because Defendant misrepresented and/or omitted material facts about the Products' true quality, reliability, safety, use, and ingredients.

151.    Had Plaintiff and Class Members known about Defendant's misrepresentations and/or omissions of material fact, they would not have purchased the Products or would have paid significantly less for them.

152.    Upon discovering Defendant's misrepresentations and/or omissions of material fact, Plaintiff stopped using the Products and still has unused Products in her possession.  Because of the Defect, Plaintiff cannot use the remaining Products and, accordingly, suffered economic loss.

153.    Defendant's conduct, as alleged herein, violates the laws and public policies of California, as set out in the preceding paragraphs of this complaint.

154.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise the Products.

155.    Plaintiff and Class Members had no way of reasonably knowing that the Products were deceptively packaged, marketed, advertised, and labeled, or that the Products were defective, unsafe, and unsuitable for their intended use.  Thus, Plaintiff and Class Members could not have

reasonably avoided the harm they suffered.  Further, this harm outweighs any legitimate justification, motive, or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner.  Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend well-established public policies.

156.    Unlawful Prong.  A business act or practice is unlawful pursuant to the UCL if it violates any other law or regulation.

157.    Defendant's conduct violates the Sherman Laws, as discussed herein.  Defendant's conduct also violates the CLRA.

158.    Unfairness Prong.  A business act or practice is unfair pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

159.    Defendant's unfair acts and practices include but are not limited to knowingly exposing consumers to unreasonable risk of injury by marketing and advertising the Products for use on the eyebrow when using the Products in this manner is inherently dangerous.

160.    Fraudulent Prong: A business act or practice is fraudulent pursuant to the UCL if it is likely to deceive members of the public.

161.    Defendant took active measures to deceive Plaintiff by representing that the Products were safe for their intended purpose through marketing and advertising communications which instructs and encourages consumers to use the Products in an unsafe manner.  Plaintiff relied on these representations and omissions to her detriment.

162.    Defendant's actions, in disseminating misleading and deceptive statements to consumers throughout the state of California and nationwide, including Plaintiff and Class Members, were and are likely to deceive reasonable consumers by obfuscating and omitting the Products' true defective nature, and therefore constitute violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

163.    Plaintiff and Class Members seek injunctive relief prohibiting Defendant from continuing its unlawful, unfair, and fraudulent business practices, and all other equitable relief available to the fullest extent permitted by law.

164.    Plaintiff and Class Members are entitled to a full refund of the Products' purchase price because mislabeled cosmetics cannot legally be manufactured, advertised, distributed, or sold, and thus, the Products are worthless as a matter of law.

165.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**COUNT VII**
**Fraud**
**(Individually and on behalf of the Classes)**

166.    Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

167.    Plaintiff brings this cause of action individually and on behalf of the Classes under California law.

168.    As discussed above, Defendant provided Plaintiff and Class Members with materially false or misleading information about the Products.  Specifically, Defendant instructed consumers to use the Products on the eyebrow and represented, through its advertising and other express representations, including but not limited to the name "ibrow," that the Products were

intended for cosmetic use in on the eyebrow and/or that the products were safe for use on the eyebrow.

169.    Further, Defendant concealed, omitted, and failed to disclose information and facts about the Products which are material to Plaintiff and California Class Members, namely that the products are not safe for use around the eye area, are banned by the State of California for use around the eye area, including on the eyebrow, and/or that products containing henna are designated by the State of California as unsuitable and illegal for cosmetic use in the eye area, including on the eyebrow.

170.    Defendant knew about the Defect and that the Products are banned by the State of California, but nevertheless marketed, advertised, and sold the Products for use on the eyebrow and without warning consumers of the known dangers. Defendant knew that the Products are unsafe, adulterated, and misbranded under the Sherman Laws, and are illegal to sell or advertise under the Sherman Laws.

171.    The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the defective Products.

172.    The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

173.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pled or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  March 16, 2023

**BURSOR & FISHER, P.A**.

By:    _/s/ Yeremey Krivoshey_

Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*PHV* application forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mgirardi@bursor.com

*Attorneys for Plaintiff*